**No. 25-10979**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Mary Dawes, Individually and the Administrator of the Estate of Decedent Genevive A. Dawes; Alfredo Saucedo, as Next Friend of Minors, K.R. and C.R.; Virgilio Rosales,

Plaintiffs - Appellants

v.

City of Dallas; Christopher Hess; Jason Kimpel,

Defendants - Appellees

---

On Appeal from the United States District Court
for the Northern District of Texas, No. 3:17-CV-1424

---

**BRIEF OF APPELLANTS**

---

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

**Daryl K. Washington**
State Bar No. 24013714
dwashington@dwashlawfirm.com
**Washington Law Firm, PC**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 - fax

**COUNSEL FOR APPELLANTS**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
|---|---|
| Mary Dawes, Virgilio Rosales, Alfredo Saucedo | **Thad D. Spalding** tspalding@dpslawgroup.com **Shelby White** swhite@dpslawgroup.com **Durham, Pittard & Spalding, LLP** P.O. Box 224626 Dallas, Texas 75222 <br><br> **Daryl K. Washington** dwashington@dwashlawfirm.com **Washington Law Firm, PC** 325 N. St. Paul St., Suite 3950 Dallas, Texas 75201 |
| Appellee:[1] | Counsel for Appellee: |
| City of Dallas | **Lindsay Wilson Gowin** lindsay.gowin@dallas.gov **Nicholas D. Palmer** nicholas.palmer@dallas.gov **James Morin** |

---

[1] Although still identified as Defendants/Appellees in the style of this case, Christopher Hess and Jason Kimpel are no longer parties to this case.

| | James.morin@dallas.gov<br>**Tatia R. Wilson**<br>tatia.wilson@dallas.gov<br>Dallas City Attorney's Office<br>7DN Dallas City Hall<br>1500 Marilla Street, 7th Floor<br>Dallas, TX 75201 |
|---|---|

/s/ Thad D. Spalding
Attorney of record for Appellants

**STATEMENT REGARDING ORAL ARGUMENT**

Although a panel of this Court has considered this case once before and held oral argument when it did, Plaintiffs-Appellants believe that oral argument could assist the Court once again in understanding the current posture of this case, the claims and issues remaining, and the impact the Court's prior opinion might or might not have on the *Monell* claims against Defendant-Appellee, the City of Dallas.

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF AUTHORITIES ................................................................................viii

INTRODUCTION ................................................................................................ xiii

JURISDICTIONAL STATEMENT .................................................................... xvi

STATEMENT OF THE ISSUES .............................................................................1

STATEMENT OF THE CASE.................................................................................2

I.   Genevive Dawes and Virgilio Rosales stop at an apartment
     complex parking lot to sleep .......................................................................2

II.  Six Dallas police officers descend on the apartment
     parking lot in response to a report of a suspicious person
     and possible stolen vehicle .........................................................................2

III. Scared and not knowing that police officers are behind
     them, Dawes and Rosales try to back out of the parking
     space...........................................................................................................6

IV.  Despite there being no threat of immediate harm to any of
     the officers, Hess and Kimpel open fire, killing Dawes and
     injuring Rosales ..........................................................................................8

V.   Following its investigation, the City finds that Hess and
     Kimpel violated its Use of Force policy, resulting in Hess's
     termination and Kimpel's suspension.......................................................13

# TABLE OF CONTENTS (cont'd)

**Page**

VI. Appellants sue Hess, Kimpel, and the City, and the District Court grants summary judgment in favor of the officers and the City ......................................................................................14

VII. This Court affirms the summary judgment in favor of Hess and Kimpel, but remands for the District Court to reconsider the claims against the City, including its conclusion that the officers' conduct was objectively reasonable as a matter of law ................................................16

SUMMARY OF THE ARGUMENT ....................................................19

ARGUMENT ......................................................................................19

I. Standard of Review ...............................................................19

II. Summary judgment, excessive force, and the objectively reasonable standard ..............................................................19

III. The summary judgment evidence at least created a fact question regarding whether Hess and Kimpel's use of deadly force was excessive and objectively unreasonable ...................21

   A. The standard is an objective, not a subjective, one .....................21

   B. Hess and Kimpel's violations of the City's use of force policy was relevant to the objectively reasonable analysis................................................24

   C. Objectively, Hess and Kimpel's resort to abrupt deadly force was excessive and unreasonable............................28

## TABLE OF CONTENTS (cont'd)

**Page**

IV.   A lack of clearly established law does not preclude *Monell*
      liability ...................................................................................32

CONCLUSION ................................................................................38

CERTIFICATE OF COMPLIANCE ................................................40

CERTIFICATE OF SERVICE ...........................................................41

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Aguirre v. City of San Antonio*,
   995 F.3d 395 (5th Cir. 2021) ...............................................................19, 20, 23

*Amador v. Vasquez*,
   961 F.3d 721 (5th Cir. 2020) ...............................................................24

*Ambler v. Nissen*,
   116 F.4th 351 (5th Cir. 2024) (en banc) .........................................22

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ...............................................................................22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................19

*Aranda v. City of McMinnville*,
   942 F. Supp. 2d 1096 (D. Or. 2013) ................................................28

*Bailey v. Ramos*,
   No. SA-20-CV-00466-XR, 2022 WL 17658641 (W.D. Tex. Nov.
   21, 2022) (Rodriguez, J.) ......................................................................27

*Barnes v. Felix*,
   605 U.S. 73 (2025) .................................................................................23

*Brown v. Lyford*,
   243 F.3d 185 (5th Cir. 2001) ...............................................................33

*Bustillos v. El Paso Cnty. Hosp. Dist.*,
   226 F. Supp. 3d 778 (W.D. Tex. 2016) .............................................35

*Bustillos v. El Paso Cnty. Hosp. Dist.*,
   891 F.3d 214 (5th Cir. 2018) .........................................34, 35, 36, 37

*Cartia v. Beeman*,
   122 F.4th 1036 (8th Cir. 2024) ...........................................................36

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                 **Page(s)**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................19

*City of Canton v. Harris*,
    489 U.S. 378 (1989)..................................................................................15

*Crane v. City of Arlington, Tex.*,
    50 F.4th 453 (5th Cir. 2022)....................................................................23

*Craven v. Perry County.*,
    No. 2:12-CV-99-KS-MTP, 2013 WL 4458771 (S.D. Miss. Aug.
    16, 2013) ...................................................................................................25

*Crosland v. City of Philadelphia*,
    676 F. Supp. 3d 364 (E.D. Pa. 2023)......................................................37

*Darden v. City of Fort Worth, Tex.*,
    880 F.3d 722 (5th Cir. 2018).....................................................................27

*Dawes v. City of Dallas*,
    No. 22-10876, 2024 WL 2268529 (5th Cir. May 20, 2024), *cert.*
    *denied sub. nom.*, 145 S. Ct. 2699 (2025) .....................................*passim*

*Edwards v. City of Balch Springs, Tex.*,
    70 F.4th 302 (5th Cir. 2023)..............................................................26, 30

*Edwards v. Oliver*,
    31 F.4th 925 (5th Cir. 2022).....................................................................29

*El-Amin v. Flores*,
    No. H-17-1268, 2018 WL 8733162 (S.D. Tex. Dec. 19, 2018) .................24, 27

*Evans v. City of Marlin, Tex.*,
    986 F.2d 104 (5th Cir. 1993).....................................................................26

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                              **Page(s)**

*Freeman v. Gore*,
483 F.3d 404 (5th Cir. 2007)..........................................................21, 22

*Gagne v. City of Galveston*,
805 F.2d 558 (5th Cir. 1986), *cert. denied*, 483 U.S. 1021 (1987) ...................26

*Graham v. Connor*,
490 U.S. 386 (1989)......................................................................21, 22

*Gutierrez v. City of San Antonio*,
139 F.3d 441 (5th Cir. 1998).................................................................27

*Hagans v. Franklin Cnty. Sheriff's Office*,
695 F.3d 505 (6th Cir. 2012).................................................................34

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...........................................................................20

*Harmon v. City of Arlington, Tex.*,
16 F.4th 1159 (5th Cir. 2021).................................................................24

*Harris v. Clay Cnty., Miss.*,
47 F.4th 271 (5th Cir. 2022)..................................................................32

*Haverda v. Hays Cnty.*,
723 F.3d 586 (5th Cir. 2013)..............................................................19, 20

*Hershey v. City of Bossier City*,
No. 21-cv-460, 2021 WL 4395056 (W.D. La. Aug. 23, 2021) .......................32

*Hope v. Pelzer*,
536 U.S. 730 (2002)...........................................................................28

*Howell v. Town of Ball*,
827 F.3d 515 (5th Cir. 2016).................................................................33

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                          **Page(s)**

*Irish v. Fowler,*
  979 F.3d 65 (1st Cir. 2020) ........................................................28

*King v. Chide,*
  975 F.2d 653 (5th Cir. 1992) .....................................................21

*Kokesh v. Curlee,*
  14 F.4th 382 (5th Cir. 2021).......................................................29

*Leonard v. St. Charles Cnty. Police Dep't.,*
  59 F.4th 355 (8th Cir. 2023).......................................................36

*Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.,*
  942 F.3d 258 (5th Cir. 2019).......................................................33

*Mays v. Springborn,*
  575 F.3d 643 (7th Cir. 2009).......................................................27

*Meadowbriar Home for Children Inc. v. Gunn,*
  81 F.3d 521 (5th Cir. 1996)........................................................32

*Mettler v. Whitledge,*
  165 F.3d 1197 (8th Cir. 1999)......................................................37

*Mohamed for A.M. v. Irving Indep. Sch. District,*
  300 F. Supp. 3d 857 (N.D. Tex. 2018), *aff'd,* 758 Fed. App'x
  352 (5th Cir. 2019).................................................................25

*Molina v. City of St. Louis, Mo.,*
  766 F. Supp. 3d 857 (E.D. Mo. 2025) ...........................................37

*Monell v. Dep't of Soc. Servs. of City of New York,*
  436 U.S. 658 (1978)............................................................*passim*

*Mullins v. Cyranek,*
  805 F.3d 760 (6th Cir. 2015).......................................................27

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                    **Page(s)**

*Owen v. City of Independence, Mo.*,
   445 U.S. 622 (1980)..................................................................32, 37

*Pasco v. Knoblauch*,
   566 F.3d 572 (5th Cir. 2009)........................................................25

*Perkins v. Hasting*,
   915 F.3d 512 (8th Cir. 2019).....................................................36, 37

*Perry v. St. Louis Cnty.*,
   No. 4:22-cv-140-MTS, 2024 WL 4527198 (E.D. Mo. Oct. 18,
   2024) ...........................................................................................37

*Peterson v. City of Fort Worth*,
   588 F.3d 838 (5th Cir. 2009), and (2) ...........................................15

*Ramirez v. Knoulton*,
   542 F.3d 124 (5th Cir. 2008)........................................................22

*Rice v. ReliaStar Life Ins. Co.*,
   770 F.3d 1122 (5th Cir. 2014)......................................................28

*Scott v. Henrich*,
   39 F.3d 912 (9th Cir. 1994)..........................................................27

*Szabla v. City of Brooklyn Park*,
   486 F.3d 385 (8th Cir. 2007) (en banc) ...............................34, 36, 37

*Tennessee v. Garner*,
   471 U.S. 1 (1985)........................................................................24

*Williams v. City of Yazoo*,
   41 F.4th 416 (5th Cir. 2022).....................................................18, 33

*Winzer v. Kaufman Cnty.*,
   916 F.3d 464 (5th Cir. 2019)........................................................33

## TABLE OF AUTHORITIES (cont'd)

**Statutes**                                                                    **Page(s)**

28 U.S.C. § 1291 ...................................................................................... xii

28 U.S.C. § 1331 ...................................................................................... xii

42 U.S.C. § 1983 ................................................................................*passim*

**Rules**

FED. R. APP. P. 4 ............................................................................... xii, 2, 3

FED. R. APP. P. 12(b) ................................................................................34

FED. R. APP. P. 27(d)(2)(A) .....................................................................40

FED. R. APP. P. 32(a)(5) ...........................................................................40

FED. R. APP. P. 32(a)(6) ...........................................................................40

FED. R. APP. P. 32(f) .................................................................................40

FED. R. APP. P. 56(a) .................................................................................19

**Other Authorities**

U.S. Const. amend IV ........................................................................*passim*

U.S. Const. amend V .................................................................................35

**BRIEF OF APPELLANTS**

Appellants-Plaintiffs, Mary Dawes, Individually as the surviving mother of Genevive A. Dawes and as the Administrator of the Estate of Genevive A. Dawes, deceased, Alfredo Saucedo as Next Friend of minors K.R. and C.R., and Virgilio Rosales, file their Appellants' brief asking that the Court reverse the District Court's final judgment, ROA.1420, including the District Court's August 21, 2025 Memorandum Opinion and Order that led to its decision to, this time, grant the City of Dallas's motion for summary judgment and dismiss the Appellants' *Monell* claims against Defendant-Appellee, the City of Dallas, based on its finding that the officers' actions did not violation the Constitution. ROA.1414-1419.

**INTRODUCTION**

This lawsuit against the City of Dallas and individual Dallas Police Officers Christopher Hess and Jason Kimpel arises out of a January 18, 2017, shooting that killed Genevive Dawes and injured Virgilio Rosales. ROA.110-133. Dawes and Rosales were sleeping in their car in the parking lot of an East Dallas apartment complex when they were surrounded by six police officers acting on a suspicious vehicle report. Not knowing what was going

on and startled by the events, Dawes initially placed her car in drive to move forward, but then attempted to back out of the parking spot at a very slow speed, approximately three miles per hour. As she reversed, and despite none of the officers being in the path of the slow-moving vehicle, Hess and Kimpel fired 13 shots through the passenger window, striking Dawes four times and ultimately killing her.

Hess and Kimpel moved for summary judgment, arguing that they acted reasonably in firing the shots because they believed that other officers were in danger from the moving vehicle. ROA.774-284. The Magistrate Judge initially heard and rightfully denied the officers' motion, finding a genuine issue of material fact as to the reasonableness of the officers' decision to shoot, and that the unlawfulness of their conduct was clearly established at the time of the shooting. ROA.1158-1187.

The District Court, however, disagreed with this ruling and instead granted summary judgment for the officers. ROA.1233-1267. In doing so, the District Court focused on Hess and Kimpel's subjective beliefs to find that the officers acted reasonably in a high stress, chaotic environment and to find that the law was not clearly established. But the video footage proves—objectively—that Hess and Kimpel's subjective belief that other

officers may have been in the path of the vehicle was wrong. All of the officers were well out of the path of the vehicle, and the vehicle was moving slower than normal walking speed. Thus, there was at least a fact issue as to whether Hess and Kimpel actually and reasonably believed that deadly force was necessary to protect any other officers.

Appellants appealed that summary judgment ruling in favor of the officers.[2] This Court affirmed the summary judgment in favor of the officers, but just on the no-clearly-established-law prong of the qualified immunity defense. ROA.1340-1343; *Dawes v. City of Dallas,* No. 22-10876, 2024 WL 2268529 (5th Cir. May 20, 2024), *cert. denied sub. nom.*, 145 S. Ct. 2699 (2025). In doing so, however, this Court did not reach the District Court's alternative holding that there was no Constitutional violation and remanded the case for reconsideration of the *Monell* claims against the City. *Id.*

On remand, the District Court reconsidered whether there was sufficient evidence to create a fact issue regarding the objective reasonableness of the officer's use of deadly force and maintained its earlier

---

[2] Once summary judgment was granted in favor of the officers, the City filed its own motion for summary judgment, arguing—correctly—that if there was no constitutional violation by the officers, there could be no *Monell* liability on the part of the City. ROA.1279-1284. The District Court granted that motion. ROA.1309-1312.

position that there was none. ROA.1414. Because that conclusion continues to be wrong, the District Court's grant of summary judgment for the City of Dallas should be reversed and the Appellants' claims against the City should be remanded for trial.

## JURISDICTIONAL STATEMENT

This case, which centers on the shooting of Genevive Dawes and Virgilio Rosales by Christopher Hess and Jason Kimpel, police officers for the City of Dallas, was brought pursuant to 42 U.S.C. § 1983. ROA.23-24. Accordingly, the District Court had federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the District Court's August 21, 2025 Final Judgment finally disposed of all claims against the only remaining party, the City of Dallas. ROA.1420.

Appellants timely noticed this appeal on August 25, 2025. Fed. R. App. P. 4; ROA.1421-1422.

## STATEMENT OF THE ISSUES

1.      Did the District Court err when it granted summary judgment in favor of the City based on its finding that the officers did not commit a constitutional violation where the summary judgment evidence created a material fact issue regarding whether the officers' use of deadly force was objectively unreasonable?

2.      If so, does this Court's prior determination that the officers were protected from liability because there was no clearly established law independently support summary judgment in favor of the City?

## STATEMENT OF THE CASE

### I.   Genevive Dawes and Virgilio Rosales stop at an apartment complex parking lot to sleep.

On January 18, 2017, Genevive Dawes and Virgilio Rosales were in the process of finding a new place for them and their two children[3] to live. ROA.962 (Rosales Dec.). They were driving a black Dodge Journey that Ms. Dawes purchased approximately one month earlier.[4]  ROA.962-63 (Rosales Dec.).  Dawes and Rosales decided to find a place to sleep and stopped in the very back corner of the parking lot of an apartment complex at 4700 East Side Avenue, Dallas, Texas.  *Id.*  Although they did not live at the complex, they decided it would be a safe place to park until the next morning when they planned to continue their search for a new place to live.  *Id.*

Dawes and Rosales parked in the very back corner, with a white, wooden fence to the left and in front of them and a white van immediately to the right.  *Id.* They parked in the back corner to stay out of the way of any residents.  *Id.*

Dawes had been driving and Rosales was in the passenger seat.

---

[3] The children were not with Dawes and Rosales at the time.  ROA.962 (Rosales Dec.).

[4] Neither Dawes nor Rosales were aware that the vehicle had been reported stolen. ROA.963 (Rosales Dec.).

ROA.963 (Rosales Dec.). When they got to the complex parking lot, Dawes and Rosales fully reclined their seats and went to sleep. *Id.*

## II. Six Dallas police officers descend on the apartment parking lot in response to a report of a suspicious person and possible stolen vehicle.

At approximately 5:00 a.m., six Dallas police officers, including officers Hess and Kimpel, were dispatched to the apartment complex in response to a report of a suspicious vehicle in the parking lot. ROA.805 (Hess Aff. in Fact); ROA.810 (Kimpel Aff. in Fact); ROA.811 (Evans Aff. in Fact); ROA.813 (Lickwar Aff. in Fact); ROA.815 (Alisch Aff. in Fact); ROA.816 (Hopkins Aff. in Fact). The six officers arrived at different times, and in three different vehicles.

Zach Hopkins and Christopher Alisch were the first to arrive, followed by Erin Evans and Peter Lickwar, and finally Hess and Kimpel. ROA.1089 (Kimpel Bodycam at 0:20-0:30); ROA.1090 (Evans Bodycam at 0:10-0:14) ROA.1091 (Lickwar Bodycam at 0:11-0:17); ROA.1092 (Hopkins Bodycam at 2:00-2:05).

Alisch and Hopkins initially parked their squad car in the driveway just short of the parking lot. ROA.815 (Alisch Aff. in Fact); ROA.816 (Hopkins Aff. in Fact); ROA.1092 (Hopkins Bodycam at 2:05). Evans and

Lickwar parked down a separate driveway on the other side of the apartment complex, blocking that driveway. ROA.811 (Evans Aff. in Fact); ROA.813 (Lickwar Aff. in Fact); ROA.1090 (Evans Bodycam at 0:10-0:14); ROA.1091 (Lickwar Bodycam at 0:11-0:17). Hess and Kimpel arrived last, and Kimpel parked their squad car behind Hopkins and Alisch's vehicle. ROA.805 (Hess Aff. in Fact); ROA.1089 (Kimpel Bodycam at 0:20-0:30). Both exits to the parking lot were therefore blocked by the officers' squad cars. ROA.813 (Lickwar Aff. in Fact).

All six officers then approached the Dodge Journey where Dawes and Rosales were sleeping. Hopkins yelled to the "driver" to put his or her hands out of the window, but also stated to one of the other officers that he did not know if the car was occupied. ROA.1092 (Hopkins Bodycam at 3:20-3:36). Condensation made the windows foggy, making it difficult to see in or to know if anyone was inside. ROA.813 (Lickwar Aff. in Fact); ROA.1061 at 26:7-17 (Hopkins Depo.); ROA.1114 (Hopkins Bodycam at 3:30-3:35). Hess and Kimpel acknowledged that it was hard to see inside the vehicle. ROA.810 (Kimpel Aff. in Fact); ROA.1003 at 51:16-23 (Hess Depo.); ROA.1009 at 74:16-24, 75:2-4, 77:14-18 (Hess Depo.); ROA.1011 at 84:11-20, 85:11-13 (Hess Depo.). However, one of the officers announced that the

2

vehicle was occupied by two people and that they were sleeping. ROA.815 (Alisch Aff. in Fact); ROA.1076 (City Disciplinary Decision, p.2); ROA.1078 (City Disciplinary Decision, p.4); ROA.1089 (Kimpel Bodycam at 2:05-2:10). Hess recalls hearing this. ROA.1011 at 84:11-20 (Hess Depo.). Thus, Hess and Kimpel knew that (1) the vehicle was occupied by two people, and (2) those people were sleeping and not currently aware that they were surrounded by police. ROA.1078 (City Disciplinary Decision, p.4).

Hess moved Alisch's squad car up near the Dodge Journey, parking behind it at an angle, but not blocking it in. ROA.1092 (Hopkins Bodycam at 4:00-4:13). Hess claimed he moved the squad car to "provide cover to officers at the scene." ROA.805 (Hess Aff. in Fact).

At this point, the position of the cars and the officers in relation to the cars is reflected as follows:



ROA.973-974 (Mark Johnson Dec. at 6-7); ROA.980 (Ex. 2-C).

After re-parking the squad car, Hess used the air horn and activated a short siren "yelp." ROA.1075 (City Disciplinary Decision, p.1); ROA.1092 (Hopkins Bodycam at 4:13-4:20). Hess did not activate the emergency lights or use the car's public address system. ROA.1097 at 27:6-10, 16-22 (Hess. Depo.); ROA.1076 (City Disciplinary Decision, p.2); ROA.1078 (City Disciplinary Decision, p.4). The officers continued to shout commands but still could not see clearly into the vehicle. ROA.1092 (Hopkins Bodycam at 4:20-5:56).

## III.   Scared and not knowing that police officers are behind them, Dawes and Rosales try to back out of the parking space.

At that point, Dawes woke Rosales up and told him that she heard something outside the car. ROA.963 (Rosales Dec. at 2). Rosales could see bright lights and hear voices but did not know police officers surrounded the vehicle. *Id.* He could see headlights shining into the car from behind them. *Id.* However, Rosales and Dawes reasonably thought it might have been someone there to cause trouble or a resident of the apartment complex whose spot they were parked in. *Id.* They could hear people yelling outside but could not tell what anyone was saying. *Id.* Having just been woken up,

4

scared, and unable to see exactly what was going on outside the vehicle, they decided they needed to leave. *Id.*

At that same time, Hess moved the squad car again, pulling it forward behind the Dodge Journey. ROA.1088 (Hess Bodycam at 0:50-1:02); ROA.1092 (Hopkins Bodycam at 5:55-6:05). Dawes started her car, put the car in reverse, and attempted to back out of the parking spot at a slow speed. ROA.964 (Rosales Dec. at 3). As she backed out of the parking spot, Dawes turned at a slight angle but bumped into Hess's squad car as Hess pulled his car closer. At this point, the officers are positioned as follows:



ROA.973-974 (Mark Johnson Dec. at 6-7); ROA.980 (Ex. 2-C).

Upon bumping into the squad car, Dawes put the car in drive and pulled forward. ROA.986 (Rosales Dec. at 3). In the process, with unknown people outside the car still yelling, and in a hurry to get out of the parking

spot, Dawes pulled too far forward and hit the fence that was in front of the vehicle. *Id.*; ROA.1088 (Hess Bodycam at 1:02-1:06); ROA.1092 (Hopkins Bodycam at 6:05-6:10).

When Dawes hit the fence, she stopped the car, put it back in reverse, and straightened her car to avoid the car that she had just bumped. ROA.964 (Rosales Dec. at 3); ROA.1088 (Hess Bodycam at 1:05-1:14); ROA.1089 (Kimpel Bodycam at 3:29-3:35); ROA.1092 (Hopkins Bodycam at 6:10-6:20). Everyone—including the officers—agreed that Dawes backed out slowly. ROA.964 (Rosales Dec. at 3); ROA.998 at 33:10-15 (Hess Depo.); ROA.1000 at 38:21-39:1-6 (Hess Depo.); ROA.1024 at 30:22-24 (Kimpel Depo.); ROA.1042 at 37:2-8 (Lickwar Depo.); ROA.1058 at 16:21-25 (Hopkins Depo.). Experts calculated the speed of the vehicle as right at or slightly below three miles per hour, or less than the average human's walking speed. ROA.972-73 (Mark Johnson Dec. at 5-6); ROA.984-985 (Mark Partain Dec. at 2-3).

**IV. Despite there being no threat of immediate harm to any of the officers, Hess and Kimpel open fire, killing Dawes and injuring Rosales.**

As Dawes begins to back out again, all of the officers moved to the right, clear of the vehicle.

6



ROA.973-974 (Mark Johnson Dec. at 6-7); ROA.980 (Ex. 2-C); ROA.1071 at 67:18-69:18 (Hopkins Depo.); ROA.1088 (Hess Bodycam at 1:14); ROA.1089 (Kimpel Bodycam at 3:27-3:33); ROA.1092 (Hopkins Bodycam at 6:11-6:19).

Even though all the officers were out of the vehicle's path, and even though the vehicle was moving slower than the officers could walk, Hess and Kimpel opened fire as the vehicle began to move, shooting through the passenger window. ROA.964 (Rosales Dec. at 3); ROA.108 (Hess Bodycam at 1:10-1:15); ROA.1089 (Kimpel Bodycam at 3:31-3:36); ROA.1091 (Lickwar Bodycam at 4:02-4:06); ROA.1092 (Hopkins Bodycam at 6:15-6:20). Hess fired two separate rounds at the slow-moving vehicle, the second time with no justification as it was even clearer that no one was in the path of the vehicle.

Hess claimed that he believed Kimpel and Hopkins were behind the

vehicle and that the vehicle was driving toward them. ROA.806 (Hess Aff. in Fact at 2). At the scene, Kimpel likewise claimed that he thought both he and Hopkins were in danger. ROA.1020 at 15:9-16:23 (Kimpel Depo.); ROA.1101 (City Disciplinary Decision at 5). However, the videos show, and Kimpel later admitted, that this claim was not true.[5] ROA.1079 at 15:9-16:23 (Kimpel Depo.).

When Hess and Kimpel moved for summary judgment, Kimpel changed his story, claiming only that he believed Hopkins was behind the vehicle when it started to move. ROA.810 (Kimpel Aff. in Fact at 1; App. 9); ROA.1021 at 19:15-18 (Kimpel Depo.). Hopkins, however, testified that he was not behind the vehicle when Hess and Kimpel fired into the Dodge Journey. ROA.1071 at 68:3-5 (Hopkins Depo.). And in their depositions, both Hess and Kimpel admit that there was no one behind the vehicle as it slowly reversed. ROA.1000 at 41:10-12 (Hess Depo.); ROA.1001 at 43:20-44:15 (Hess. Depo.); ROA.1010 at 79:15-80:17 (Hess Depo.); ROA.1020 at 15:9-16:23 (Kimpel Depo.); ROA.1022 at 23:18-24:2); ROA.1028 at 46:1-6 (Kimpel Depo.); ROA.1029 at 51:2-17 (Kimpel Depo.).

---

[5] Notably, the City expressly found that Kimpel was untruthful during the investigation of the shooting. ROA.1080.

Even if there was someone behind the vehicle, which is not the case, Hess admitted that the vehicle was moving so slowly that anyone that was behind the vehicle would have had time to move out of the way. ROA.1001 at 44:1-15 (Hess Depo.). The video evidence is likewise clear that no officers were behind the moving vehicle. Rather, all of the officers are behind the squad car. Hess and Kimpel both had a clear view that no one was in the vehicle's projected backward path.



ROA.973-974 (Mark Johnson Dec. at 6-7); ROA.980 (Ex. 2-C). The officers who were deposed—Hess, Kimpel, Lickwar, and Hopkins—all admit that no one was in danger and no one was behind the vehicle when it slowly reversed and when the shots were fired.

Tellingly, no other officers discharged their weapons. Alisch, who had

a similar sightline to Hess and Kimpel, stated that he did not fire a weapon because he could not identify a target. ROA.815 (Alisch Aff. in Fact at 1). Lickwar similarly stated that he did not have a clear line of sight, could not identify a target, and that it was against the City's policy to shoot at a moving vehicle if no one is in the way of it. ROA.1021 at 20:20-21:11 (Lickwar Depo.); ROA.1022 at 24:21-25:4 (Lickwar Depo.). Hopkins, who was closest to the vehicle's backwards path, stated that no one was behind the vehicle, he did not have good target acquisition for the driver, and he did not want to fire at a possible passenger. ROA.1078 (City Disciplinary Decision at p.4). Hopkins also noted that the vehicle's dark, foggy windows prevented him from seeing inside. *Id.*

Nonetheless, despite knowing there were two people in the car, Hess fired a total of twelve shots into the vehicle *from the passenger side*, hitting Dawes four times. ROA.1076 (City Disciplinary Decision at 2); ROA.1078 (City Disciplinary Decision at 4); ROA.1088 (Hess Bodycam at 1:14-1:20). Kimpel fired once, striking the vehicle's passenger door frame. ROA.1076 (City Disciplinary Decision at 2); ROA.1089 (Kimpel Bodycam at 3:35-3:42). Dawes later died from her injuries. ROA.965 (Rosales Dec. at 4); ROA.1076 (City Disciplinary Decision at 2); ROA.1078 (City Disciplinary Decision at 4).

**V.     Following its investigation, the City finds that Hess and Kimpel violated its Use of Force policy, resulting in Hess's termination and Kimpel's suspension.**

Following the shooting, the City investigated the conduct of both Hess and Kimpel. The City found that Hess violated its policy regarding felony traffic stops and use of deadly force, "placed a person in greater danger than necessary," and terminated him. ROA.1077 (City Disciplinary Decision at 5). Hess was also indicted by a Dallas Grand Jury on the charge of aggravated assault by a public servant. *Id.*

The City similarly found that Kimpel violated its use of deadly force policy and placed a person in greater danger than necessary. ROA.1076-1077 (City Disciplinary Decision at 5-6). The City also found that Kimpel was untruthful during the investigation of an officer-involved shooting and suspended him for 30 days. *Id.*

**VI.    Appellants sue Hess, Kimpel, and the City, and the District Court grants summary judgment in favor of the officers and the City.**

Appellants filed suit alleging constitutional violations by Hess, Kimpel, and the City under 42 U.S.C. Section 1983. ROA.703. Hess and Kimpel filed a motion for summary judgment on the basis of qualified immunity. ROA.774-784. The Magistrate Judge initially heard and denied

11

the Officers' motion, finding a genuine issue of material fact as to the reasonableness of the officers' decision to shoot, and that the unlawfulness of their conduct was clearly established at the time of the shooting. ROA.1158-1187.

Hess and Kimpel filed objections to the Magistrate Judge's recommendation. ROA.1188-1199. The District Court sustained those objections, disagreeing with the Magistrate Judge's substantive recommendation that the summary judgment be denied and instead granted summary judgment for the officers. ROA.1233-1267. Upon doing so, the City filed its own summary judgment motion, arguing that without a constitutional violation, there could be no *Monell* liability against it. ROA.1277-1278. The District Court agreed, granted the City's motion, and entered a final judgment disposing of all claims and parties. ROA.1313.

**VII. This Court affirms the summary judgment in favor of Hess and Kimpel, but remands for the District Court to reconsider the claims against the City, including its conclusion that the officers' conduct was objectively reasonable as a matter of law.**

On appeal, this Court affirmed the summary judgment in favor of the officers, finding that the officers were entitled to qualified immunity because there was no clearly established law. ROA.1340-1343; *see also Dawes*, 2024

WL 2268529 at *3-4. However, in doing so, this Court did not reach the District Court's alternative holding that there was no Constitutional violation and remanded the case for reconsideration of the claims against the City. *Id.*

Specifically, this Court noted as follows:

> The district court's grant of summary judgment to the City of Dallas rested on its alternative holding that, if the law was clearly established, the officers nevertheless committed no constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring a constitutional rights violation for § 1983 claims against a municipality). *Because we do not reach the district court's alternative holding, we remand the claims against Dallas to the district court for further consideration.* On remand, the district court may reiterate its no rights-violation finding, may reconsider that finding, or may consider any other aspect of the plaintiffs' claims against the City of Dallas.

ROA.1343-44; *Dawes*, 2024 WL 2268529, at *4 (emphasis added).

On remand, the District Court asked the parties to file supplemental briefing to "address liability under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)" and, specifically, provide input on "(1) whether the test to satisfy *Monell* is met if the Court revisits its no-rights-violation ruling, *see Peterson v. City of Fort Worth,* 588 F.3d 838, 847-48 (5th Cir. 2009), and (2) what impact the Fifth Circuit's ruling on the 'clearly established' prong has on *Monell* liability." (ROA.21 at Dkt. 166).

13

Upon providing the requested briefing, the District Court re-iterated its "no-rights violation" finding, "maintain[ing] … that there was no constitutional violation by the officers" and "because there is no liability from the officers, Dawes cannot prove liability as to the City."  ROA.1414. Alternatively, in a footnote, the District Court also held "that because there is no clearly established right, it follows that Dawes's claims against Dallas must also fail" because, citing *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214 (5th Cir. 2018), a city cannot have a policy of violating the Constitution, especially in the unwritten policy context, if the parameters of a constitutional violation are not clearly established.  ROA.1417.  Consistent with this decision, the District Court entered a final judgment in favor of the City, ROA.1420, and this appeal followed.  ROA.1421.

**SUMMARY OF THE ARGUMENT**

The District Court granted summary judgment because it placed greater importance on the officers' subjective beliefs and gave no weight to the objective evidence.  That was error.  In qualified immunity cases, the focus is on whether the conduct of the officers was *objectively* reasonable. And the objective evidence in this case—the testimony of the officers and the body camera video of six different officers—established that no officers or

14

anyone else were in immediate danger at the time Dawes backed her vehicle slowly out of the parking spot. The District Court either ignored this evidence or refused to give it any weight and, by doing so, erred in concluding that the law was not clearly established and that the officers did not use excessive force in shooting a non-dangerous suspect.

The District Court's error can be traced to its focus on Hess and Kimpel's allegation that they reasonably believed deadly force was necessary to protect other officers in the path of the vehicle. The District Court reasoned that an officer is entitled to use deadly force to protect another officer and because Hess and Kimpel subjectively believed that other officers were in the path of the vehicle, their conduct was reasonable as a matter of law. But what the District Court ignored is the *objective reasonableness* of Hess and Kimpel's alleged belief.

As Judge Dennis recognized in his dissent to this Court's first opinion, the objective evidence establishes that no officer was in the path of the slowly reversing vehicle, and in fact the vehicle was moving at a speed slower than a walking pace. Appellant's evidence also shows that based on where Hess and Kimpel were located at the time they fired their weapons, they had a clear view of the vehicle's path, and could see that no officer was in the way.

15

Hess and Kimpel knew that there were two people in the car, a driver and a passenger, and that the windows of the vehicle were foggy, impeding any view inside. Yet they made the unreasonable choice to fire through the passenger window with no way to see their intended target. The four other officers on the scene never fired any shots and testified that (1) they could not see the target, (2) firing would be against department policy, and (3) there was no one behind the vehicle. Given these facts as raised by the summary judgment evidence, Hess and Kimpel used excessive force in killing Dawes and shooting at Rosales.

The fact that there was no clearly established law protects only the officers, not the City.  Even the City agrees, noting in its supplemental briefing that "the City does not believe that the Fifth Circuit's ruling on the 'clearly established" prong has any impact on *Monell* liability."  (ROA.1413) (citing *Williams v. City of Yazoo,* 41 F.4th 416, 421 (5th Cir. 2022)).  Thus, the District Court "alternative" finding—that *Monell* claims are barred by the earlier "clearly established law" decision—does not support its final judgment either, which should be reversed and the *Monell* claims remanded to the District Court for further proceedings, including trial.

## ARGUMENT

### I.    Standard of Review.

The District Court's latest grant of summary judgment is reviewed *de novo*. *Aguirre v. City of San Antonio,* 995 F.3d 395, 405 (5th Cir. 2021).

### II.    Summary judgment, excessive force, and the objectively reasonable standard.

The primary purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Granting a motion for summary judgment is only proper after the movant presents competent evidence showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Catrett*, 477 U.S. at 323. A fact is material if it might affect the outcome of the suit under governing law. *Aguirre,* 995 F.3d at 406. "A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Courts are prohibited from making

17

credibility determinations and weighing the evidence. *Id.*

The doctrine of qualified immunity is an affirmative defense available only to the individual officers, not the City, and theoretically exists to protect officers from liability for civil damages where the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Aguirre,* 995 F.3d at 406 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, at the summary judgment stage, deciding whether an officer is entitled to qualified immunity follows a two-prong inquiry:

1.  whether the facts, taken in the light most favorable to the injured party, show that the officer's conduct violated a federal right; and

2.  whether the right in question was "clearly established" at the time of the violation.

*Id.* This Court, in its 2024 Opinion, addressed only the second prong. *Dawes,* 2024 WL 2268519 at *4. This appeal presents this Court the opportunity to address the first prong.[6] *Id.*

---

[6] Judge Dennis, in his dissent, addressed the first prong, making it clear that there was ample evidence to support a constitutional violation and that the panel should not "condone the inexcusable incompetence displayed by these two officers—both of whom were suspended or terminated from their positions as police officers for having violated their department's use of force." *Dawes,* 2024 WL 2268519 at *4 (Dennis, J., concurring in part, dissenting in part).

**III.**   **The summary judgment evidence at least created a fact question regarding whether Hess and Kimpel's use of deadly force was excessive and objectively unreasonable.**

   **A.**   **The standard is an objective, not a subjective, one.**

If a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *King v. Chide*, 975 F.2d 653, 656 (5th Cir. 1992); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  Dawes was shot and killed and Rosales was injured as a result of the officers' use of deadly force.  No one disputes that element one is satisfied by the summary judgment proof.

The constitutional analysis therefore turns on whether the officers' use of force was "excessive" and objectively "unreasonable." *Gore*, 483 F.3d at

19

416; *see Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (holding that because there was no dispute that the plaintiff suffered an injury, "[t]he relevant question . . . [was] whether the force was 'clearly excessive' or 'clearly unreasonable'").  The officers' subjective beliefs are irrelevant. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).  The relevant question is the objective, albeit fact-specific question of whether a reasonable officer could have believed that deadly force was necessary.  *See id.*

Generally speaking, courts "must balance the amount of force used against the need for force" considering "the totality of the circumstances" from the "perspective of a reasonable officer on the scene" and the well-established *Graham v. Connor*[7] factors.  *Ambler v. Nissen,* 116 F.4th 351, 357 (5th Cir. 2024) (en banc).  The *Graham* factors include the severity of the crime at issue, whether the suspect poses a threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest. *Graham,* 490 U.S. at 396.  In considering these factors, even in deadly force cases, the Court is to consider the totality of the circumstances. *Barnes v. Felix,* 605 U.S. 73, 79 (2025).

---

[7] *Graham v. Connor*, 490 U.S. 386 (1989)

Most notable here, the "totality of the circumstances" inquiry into a use of force has no time limit. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. Or as the Federal Government puts the point, those later, "in-the-moment" facts "cannot be hermetically sealed off from the context in which they arose." Brief for United States as *Amicus Curiae* 14. Taking account of that context may benefit either party in an excessive-force case. Prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. Or instead they may show why such an officer would have perceived the same conduct as innocuous. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force.

*Id.* at 80–81; *see also Crane v. City of Arlington, Tex.*, 50 F.4th 453, 464 (5th Cir. 2022) (court can consider "the speed with which an officer resorts to force where officers deliberately, and rapidly, eschews lesser responses when such means are plainly available and obviously recommended by the situation."). Naturally, such cases are fact-intensive and whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case. *Aguirre,* 995 F.3d at 407.

Ultimately, however, it is always unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v.*

*Garner,* 471 U.S. 1, 11 (1985).  Thus, in deadly force cases, "the threat-of-harm typically predominates the analysis…" *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021); *see also Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so"); *Flores*, 381 F.3d at 398 ("It is objectively unreasonable to use deadly force unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.") (internal citation and quotation marks omitted).  The focus of the inquiry is on the act that led the officer to discharge his weapon. *Amador v. Vasquez,* 961 F.3d 721, 728 (5th Cir. 2020).

### B. Hess and Kimpel's violations of the City's use of force policy was relevant to the objectively reasonable analysis.

The City agreed, finding that both Hess and Kimpel violated its use-of-deadly-force policy.  ROA.1079-1080 (City Disciplinary Decision at pp.5-6); ROA.1083-1084 (City Disciplinary Decision at pp.9-10).  This finding, while not dispositive of the issue, is nonetheless probative of whether Hess and Kimpel acted in an objectively reasonable manner.

22

In its original opinion, the District Court summarily rejected the City's findings, stating "a law enforcement officer's violation of department policy *is constitutionally irrelevant* for purposes of a claim brought under § 1983."[8] ROA.1265. But, the District Court overstates this proposition.

The general rule is simply that "[a] deviation from an entity's internal procedures, *without more*, does not show discriminatory intent or amount to a constitutional violation, as constitutional requirements may nevertheless have been met." *Mohamed for A.M. v. Irving Indep. Sch. District*,300 F. Supp. 3d 857, 884 (N.D. Tex. 2018), *aff'd,* 758 Fed. App'x 352 (5th Cir. 2019) (emphasis added); *see also Evans v. City of Marlin, Tex.*, 986 F.2d 104, 108 n. 6 (5th Cir. 1993) (citing *Gagne v. City of Galveston*, 805 F.2d 558, 559-60 (5th Cir.

---

[8] The District Court quoted *Craven v. Perry County.*, No. 2:12-CV-99-KS-MTP, 2013 WL 4458771, at *9 (S.D. Miss. Aug. 16, 2013), which itself quoted *Pasco v. Knoblauch,* 566 F.3d 572, 579 (5th Cir. 2009). ROA.1265 at n. 160. It is worth noting that, in both cases, the issue was not an actual violation of any department policy like the one at issue here. Rather, in *Craven,* the plaintiff sought to infer knowledge of an inmate's medical condition on the part of the sheriff based on *plaintiff's allegation* that the sheriff violated jail policies requiring that (1) a medical intake sheet be filled out for each inmate and (2) individuals charged with DUI be held at least six to eight hours. *Craven,* 2013 WL 4458771, at *9. In *Pasco,* this Court determined that the *district court's finding* that the officer "acted contrary to police department protocol" when he bumped the plaintiff off the road did not form a basis for liability under section 1983 and did not impact qualified immunity. *Pasco,* 566 F.3d at 579. Here, the City actually determined, following its investigation, that Hess and Kimpel violated its own use of force policy that tracks Fourth Amendment jurisprudence. Thus, the cases the district court relied on to discount the officers' violations here are simply not applicable.

23

1986), *cert. denied,* 483 U.S. 1021 (1987)) ("[t]he failure to follow procedural guidelines, *standing alone*, does not implicate constitutional liability.").[9]  In short, these cases do not hold that the violation of an internal policy or procedure can never be evidence of a constitutional violation.  This makes sense considering that some police department policies and procedures are expressly modeled after Fourth Amendment jurisprudence.  If they weren't, the municipality would face certain *Monell* violations.  *See Edwards v. City of Balch Springs, Tex.,* 70 F.4th 302, 307 (5th Cir. 2023) ("If an official policy itself violates federal law, or directs an employee to do so, then the policy is facially unconstitutional, and it necessarily follows that a constitutional violation will most likely occur.") (quotations omitted).

Where the policy that is violated tracks Fourth Amendment jurisprudence, whether an officer is following that policy or procedure is relevant to the question of reasonableness in excessive force cases.  *See Darden v. City of Fort Worth, Tex.,* 880 F.3d 722, 732 n. 8 (5th Cir. 2018) ("While we certainly do not suggest that the violation of police department policies

---

[9] And *Gagne* does not directly support the proposition *Evans* cites it for.  Rather, *Gagne* addresses qualified immunity and holds simply that the violation of a departmental regulation does not, by itself, deprive an officer of qualified immunity protection. *Gagne,* 805 F.2d at 559.

24

is sufficient to make out a constitutional violation, we have found their existence and corresponding notice to officers relevant in analyzing the reasonableness of a particular use of force under the totality of the circumstances.") (citing *Gutierrez v. City of San Antonio,* 139 F.3d 441, 448-49 (5th Cir. 1998)); *Bailey v. Ramos,* No. SA-20-CV-00466-XR, 2022 WL 17658641, at *4 (W.D. Tex. Nov. 21, 2022) (Rodriguez, J.) (whether officer's conduct conformed to standard of care in policing is relevant to whether conduct was reasonable); *El-Amin v. Flores,* No. H-17-1268, 2018 WL 8733162, at *6 (S.D. Tex. Dec. 19, 2018) (noting, in summary judgment context, admission of officer that he did not give verbal warning before tasing plaintiff, in violation of Harris County's policy on use of Tasers); *see also Mullins v. Cyranek,* 805 F.3d 760, 768 (6th Cir. 2015); *Mays v. Springborn,* 575 F.3d 643, 650 (7th Cir. 2009) ("although violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass.") (citation omitted); *Scott v. Henrich,* 39 F.3d 912, 915-16 (9th Cir. 1994) (internal policy guidelines relevant where one of their purposes is to protect the individual against whom force is used); *Aranda v. City of McMinnville,* 942 F. Supp. 2d 1096, 1102 (D. Or. 2013). Here, the use

25

of force policy that Hess and Kimpel violated tracks the standard for excessive force under the Fourth Amendment. As such, it is relevant and applicable here.[10]

### C.   Objectively, Hess and Kimpel's resort to abrupt deadly force was excessive and unreasonable.

The District Court noted that there is no real dispute that the vehicle was moving slowly and that none of the officers were in the path of the vehicle. ROA.1243-1245. Yet the District Court ignored what is in dispute: whether it was *objectively* reasonable for Hess and Kimpel to believe that other officers were in the path of, and in danger from, the moving vehicle. The District Court instead held that it could not "side with the Plaintiffs without engaging in the Monday-morning quarterbacking that the Fifth Circuit repeatedly warns against" and took as fact Hess and Kimpel's alleged subjective belief that there was a serious threat of harm to them or other officers. ROA.1263-1266. The District Court then concluded that the

---

[10] In his dissenting opinion, Judge Dennis agreed that while the violation of the use of force policy alone would not establish a constitutional violation, the City's finding that one of the officers lied was relevant to the credibility of that officer and "the City's finding that the officers acted unreasonably in using deadly force support[ed] plaintiffs' contention that the officers' use of force was not reasonable. *Dawes*, 2024 WL 2268529, at *6 n. 1 (citing *Hope v. Pelzer*, 536 U.S. 730, 741-42 (2002), *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014), and *Irish v. Fowler*, 979 F.3d 65, 77 (1st Cir. 2020)).

26

high stress, chaotic scene warranted Hess and Kimpel's use of deadly force to protect the other officers. ROA.1263.

However, the video evidence and the diagrams based on those videos demonstrate that Hess and Kimpel had a clear view behind the car and could see that no other officers were in danger. This raises at least a fact issue as to whether Hess and Kimpel acted as a reasonable officer would under the same circumstances. In other words, the issue is not what Hess and Kimpel *subjectively* believed, but whether that belief was actually, *objectively* reasonable. *See Kokesh v. Curlee,* 14 F.4th 382, 391 (5th Cir. 2021) ("where there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question" of whether an officer's conduct was objectively reasonable).

The video evidence, and even the deposition testimony of the officers detailed above, further proves that none of the officers were ever threatened by the movement of Dawes's vehicle.[11]   And, certainly, there was no

---

[11] The District Court attempted to distinguish *Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022), holding that Hess and Kimpel had a reasonable basis to believe that at least one officer was in the path of Dawes's vehicle. ROA.1265-1266 at n. 163. The District Court even went so far as to argue that *Edwards* was wrongly decided because it would potentially require every case involving excessive force and a suspect fleeing in a vehicle to go to a jury when the extent of harm posed by the vehicle was at issue. ROA.1266 at n. 163. Appellants disagree that *Edwards* was wrongly decided or extends so far. However,

27

immediate threat of harm to Hess, Kimpel, or any of the other officers when Hess and Kimpel chose to fire 13 rounds through the *occupied* passenger seat with no clear view in an alleged attempt to hit the driver of a vehicle that was moving at three miles per hour.

The majority of the panel that first heard this case did not analyze the excessive force evidence, except as necessary to address the "clearly established law" prong. Judge Dennis, however, addressed the evidence head on in his dissent and made it clear that "[t]he video footage, testimony, and expert analysis at the very least demonstrate the existence of genuine disputes of material facts that Dawes posed no immediate danger to officers and was not actively resisting or attempting to flee at the time she was killed." *Dawes*, 2024 WL 2268529, at *5 (Dennis, J., dissenting). More specifically,

- "…plaintiffs have presented evidence that they did not hear the officers' commands since they were asleep—it was around three in the morning and the officers only made their commands at a distance. Even if the officers subjectively believed Dawes to be attempting to flee, the video evidence reveals that she was boxed in

---

in a case such as this, where the extent of harm or danger posed by a fleeing vehicle is disputed by the parties and when the video evidence definitively shows no immediate danger to the officers or anyone else, then summary judgment on the excessive force claim is not appropriate.

28

and would not have been able to escape—especially at the slow speed at which her vehicle was moving."

- "[] plaintiffs presented expert testimony—supported by the video footage—that Dawes was driving at a speed of under three miles per hour when the officers supposedly believed her to be fleeing. Hess testified that Dawes's vehicle was "slowly revving" and that he did not perceive her to be attempting to reverse at a high level of speed. Even if the officers believed Dawes to be making a slow, futile attempt to flee by reversing slowly while boxed-in by other cars, our caselaw is clear that it is unjustified to use deadly force against a fleeing felon who poses no safety risk."

- "It is undisputed that no one was in the path of Dawes's slow-moving vehicle at the time the officers killed Dawes and injured Rosales; indeed, both officers testified that when they used deadly force they did not observe anyone in danger and did not tell anyone to get out of the way. In his deposition testimony, Hess agreed that Dawes's vehicle was moving at less than three miles per hour when he fired his first round of shots, and that any officer in the path of Dawes's vehicle could have moved out of the way by the time he fired his second round of shots."

- "Even if the officers incorrectly believed other officers to be endangered, their subjective beliefs are wholly irrelevant to the Fourth Amendment inquiry into whether a "reasonable officer on the scene" would have believed that a boxed-in vehicle moving at less than three miles per hour presented an imminent, significant danger to other officers."

- "Moreover, the City of Dallas found Kimpel's claim that he believed other officers to be in danger untruthful and suspended him for thirty days—calling into question the reliability of the officers' after-the-fact assertion that they shot into the Dawes vehicle thirteen times to protect other officers from a car moving at slow, near walking speed."

29

*Id.* at *5–6 (citations and footnote omitted).  This Court should follow Judge Dennis's lead: the objective circumstances of this case did not warrant the use of deadly force, and thus summary judgment on the excessive force claims was not proper.

## IV.    A lack of clearly established law does not preclude *Monell* liability.

The "clearly established law" prong of an officer's qualified immunity defense is an element that is unique to qualified immunity.  A municipality is not entitled to qualified immunity based on the good faith of its officers. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 638 (1980); *Harris v. Clay Cnty., Miss.,* 47 F.4th 271, 276 (5th Cir. 2022).  Thus, asserting a civil rights claim against a municipality does not also require allegations of the violation of a "clearly established right."  *Meadowbriar Home for Children Inc. v. Gunn,* 81 F.3d 521, 532 (5th Cir. 1996).  For these reasons, the grant of qualified immunity to City employees does not necessarily preclude the City from being held liable.  *Hershey v. City of Bossier City,* No. 21-cv-460, 2021 WL 4395056, at *7 (W.D. La. Aug. 23, 2021).  If the Section 1983 claims against police officers are dismissed because of the lack of a constitutional violation, the claims against the City would also be defeated.  *Id.*  However, where

30

claims are dismissed based on the lack of clearly established law, the City may still be liable. *Id.* (citing *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019); *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016); and *Brown v. Lyford*, 243 F.3d 185, 191 n. 18 (5th Cir. 2001)); *see also Winzer v. Kaufman Cnty.*, 916 F.3d 464, 477 (5th Cir. 2019) (finding summary judgment in favor of county to be premature, where there were fact issues as to constitutional violation, even though court determined that right at issue was not clearly established). Thus, this Court's ruling, affirming the District Court's grant of qualified immunity to the officers based on the lack of clearly established law, does not prevent the claim against the City from moving forward. Even the City agrees. ROA.1413 ("the City does not believe that the Fifth Circuit's ruling on the 'clearly established" prong has any impact on *Monell* liability.") (citing *Williams v. City of Yazoo*, 41 F.4th 416, 421 (5th Cir. 2022)).

Having said that, Appellants identified a case in the course of briefing this issue in the District Court that seems to make the "clearly established law" finding potentially relevant here. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214 (5th Cir. 2018). *Bustillos* involved a civil rights claim against State medical staff for conducting intrusive searches. *Id.* at 218. In

addressing the Rule 12(b) dismissal of the claims against the medical staff, the Fifth Circuit concluded that the Plaintiff had not satisfied her burden of demonstrating that the alleged violations by the medical staff violated clearly established law. *Id.* at 222. Then, however, in addressing the claims against the County hospital district, a panel of this Court concluded that "[b]ecause Bustillos did not demonstrate a clearly established right, it follows that her claims for deliberate indifference against the District also fail." *Id.* This Court did not explain its conclusion, except to say that because the county liability theory was premised on the hospital district's "deliberate indifference," "a 'policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Id.* (citing and quoting *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 511 (6th Cir. 2012), and *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 393 (8th Cir. 2007) (en banc)).

*Bustillos* should not apply here. Although it is unclear from the opinion what the basis was for plaintiff's assertion of county liability, the actual complaint in *Bustillos* reveals that the municipal liability allegations were nothing more than vague and conclusory allegations that the individual defendants, not the Hospital District, "developed a custom of

32

illegally searching the citizens of on behalf of CBP and ICE agents…" and "developed a custom of violating citizens' Fifth Amendment right to due process by conducting highly sensitive and invasive internal searches of citizens in conjunction with CBP agents…"  ROA.1402-1403 at ¶¶ 113, 121.[12] Not surprisingly, "the [district] court found that Bustillos had failed to sufficiently allege any of the necessary elements for county liability under § 1983 and failed to timely give notice of her state tort claims."  *Bustillos*, 891 F.3d at 219.  The lower court's opinion in *Bustillos*, in turn, indicates that the claims against the hospital simply mirrored the Fourth and Fifth Amendment violations asserted against the nurses.  *Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016).  In any event, the municipal allegations in *Bustillos* were not based on detailed allegations of a custom or practice like the claims asserted against the City here.

This is important because the rule this Circuit appears to have relied on in *Bustillos,* which comes from the Eighth Circuit's opinion in *Szabla*, does not apply where there are allegations of an unconstitutional custom or

---

[12] The complaint in *Bustillos* was a state court petition that was then removed to federal court.

practice, as is the case here. A recent opinion from the Eastern District of Missouri highlights this distinction:

> The City has not cited to any case holding that a right must be clearly established before a plaintiff can demonstrate municipal liability based on a custom.[13] On the contrary, the Eighth Circuit's test for unconstitutional custom does not require deliberate indifference to a constitutional right. Rather, the custom test requires deliberate indifference to or tacit authorization of *unconstitutional misconduct* by municipal employees. *Ware*, 150 F.3d at 880. Indeed, in other cases where individual officers were found to have qualified immunity, the Eighth Circuit has not adopted the City's proposed standard and test, but instead has addressed the merits of the claim. *See Cartia v. Beeman*, 122 F.4th 1036, 1045 (8th Cir. 2024) (applying the Eighth Circuit's typical custom test and analysis even after finding that the officers at issue did not violate a clearly established right); *see also Leonard v. St. Charles Cnty. Police Dep't.*, 59 F.4th 355 (8th Cir. 2023) (same). Under the City's analysis, the finding that the law was not clearly established would make any further analysis unnecessary.
>
> In § 1983 cases based upon municipal custom deliberate indifference is ordinarily shown by a pattern of constitutional violations. *Perkins v. Hasting*, 915 F.3d 512, 521 (8th Cir. 2019) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Furthermore, "[e]vidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment." *Perkins*, 915 F.3d at 521 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999));

34

*see also Perry v. St. Louis Cnty.,* No. 4:22-cv-140-MTS, 2024 WL 4527198, at *17 (E.D. Mo. Oct. 18, 2024) (same).

*Molina v. City of St. Louis, Mo.*, 766 F. Supp. 3d 857, 870–71 (E.D. Mo. 2025).[13]

Because the pattern of constitutional violations alleged by Plaintiffs here prove deliberate indifference by the City, *Bustillos* and this Court's determination that the law, as known to the officers at the time they killed Dawes, was not clearly established, does not impact *Monell* liability of the City.[14]

---

[13] *Molina* further highlights the fact that the Eight Circuit's holding in *Szabla* was premised on the fact that the municipality *did not have a history* of police officers engaging in unreasonable conduct such that the need for additional training or supervision was plain. *Molina,* 766 F. Supp. 3d at 870 n. 13 (citing *Szabla,* 486 F.3d at 392-93).

[14] It is worth noting that even if *Bustillos* was applicable here, there is a circuit split on the issue. *Crosland v. City of Philadelphia*, 676 F. Supp. 3d 364, 381 n. 17 (E.D. Pa. 2023) (noting a circuit split, with this Circuit and *Bustillos* on one side, with the First, Sixth, and Eighth Circuits, and the Ninth and Tenth Circuits on the other). In *Crosland,* the District Court cited several Third Circuit cases that it believed "suggest[ed] that municipal liability should remain untethered to the 'clearly established' qualified immunity standard and that a contrary holding would "contravene the Supreme Court's decision in *Owen v. City of Independence*, 445 U.S. 622 [] (1980)" which "held that 'municipalities have no immunity from damages liability flowing from their constitutional violations." *Id.* at 382-83.

**CONCLUSION**

The summary judgment record in this case precludes a finding that "there was no constitutional violation by the officers." There is a fact issue as to the reasonableness of Hess and Kimpel's claim that they believed other officers were endangered by Dawes's slow reversal out of the parking space, such that they were justified in firing 13 shots through the passenger window to stop the vehicle. Taking the facts most favorable to Appellants, that (1) Hess and Kimpel knew there were two occupants in the car, (2) they knew no other officers were in the path of the vehicle, (3) they had no clear shot, (4) they had to endanger the passenger in an attempt to shoot the driver, and (5) the car was moving at a non-dangerous, slow rate of speed, Hess and Kimpel were not justified in using deadly force to stop the vehicle. The fact that the law may not have been clearly established under these circumstances is nothing more than a defense to liability the officers enjoy, not a defense to liability for the City.

For these reasons, Appellants respectfully request that this Court reverse the Final Judgment, the order granting Officer Hess and Officer Kimpel's motion summary judgment and also the order dismissing the claims against the City, and remand all of these claims back to the District

Court for further proceedings including trial on their merits.

Respectfully submitted,

By: */s/ Thad D. Spalding*

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

and

**Daryl K. Washington**
State Bar No. 24013714
dwashington@dwashlawfirm.com
**Washington Law Firm, PC**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 - fax
***Attorneys for Plaintiffs-Appellants***

37

## CERTIFICATE OF COMPLIANCE

1.　This brief complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f),

　　**X**　　this brief contains **9,184** words, or

　　__　　this brief uses a monospaced typeface and contains _____ lines of text.

2.　This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

　　**X**　　this brief has been prepared in a proportionally spaced typeface using **Microsoft® Word for Microsoft 365 MSO (16.0.14026.20202) 64-bit** in **14-point**, **Book Antiqua font**, or

　　__　　this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

　　　　　　　　　　　　　　　*/s/ Thad D. Spalding*
　　　　　　　　　　　　　　　Thad D. Spalding
　　　　　　　　　　　　　　　Attorney for Plaintiffs-Appellants
　　　　　　　　　　　　　　　Date: **October 30, 2025**

## CERTIFICATE OF SERVICE

I hereby certify that on **October 30, 2025**, I electronically filed the foregoing document with the Clerk of the Court for the Fifth Circuit, using the electronic case filing ("ECF") system of the Court. All counsel of record were served via electronic service through the ECF system.

Lindsay Wilson Gowin, lindsay.gowin@dallas.gov
Dallas City Attorney's Office
7DN Dallas City Hall
1500 Marilla Street, 7th Floor
Dallas, TX 75201
**Attorneys for Appellee, City of Dallas**

*/s/ Thad D. Spalding*
**Thad D. Spalding**